**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

WILLIE COLEMAN, *et al.*,

    Plaintiffs,

v.

CHIEF OIL & GAS, LLC, *et al.*,

    Defendants.

No. 4:21-CV-00090

(Chief Judge Brann)

**MEMORANDUM OPINION**

**MARCH 17, 2022**

## I.    BACKGROUND

Plaintiffs Willie Coleman and Tracey Chambers-Coleman filed a three-count complaint, alleging premises liability, negligence, and loss of consortium.  This case is predicated on the Court's diversity jurisdiction and brought under Pennsylvania law.  Though Defendant Western Oilfields Supply Co. ("Western") answered the Colemans' complaint, Defendant Chief Oil & Gas, LLC ("Chief") moved to dismiss instead.

Pursuant to Federal Rule of Civil Procedure 12(d), the Court converted Chief's motion to dismiss to a motion for summary judgment.  The Court also allowed the parties to submit supplemental briefs, exhibits, affidavits, extraneous proof, and all other material pertinent to the motion for summary judgment.  This

converted motion for summary judgment is now ripe for disposition.  For the reasons below, it is granted.

## II.      DISCUSSION

### A.      Standard of Review

I begin my analysis with the standard of review that undergirds summary judgment.  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[1]  The Supreme Court of the United States has advised that Federal Rule of Civil Procedure 56 "should be interpreted in a way that allows it to accomplish this purpose."[2]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[4]  A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[5]   And a plaintiff must "point to

---

[1]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[2]   *Id.* at 324.

[3]   Fed. R. Civ. P. 56(a).

[4]   *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).

[5]   *Clark*, 9 F.3d at 326.

admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[6]

A judge's task when "ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[7]  Thus, if "the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[8]

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."[9]  Part of the judge's role at this stage is to ask "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[10]  In answering that question, the Court "must view the facts and evidence presented on the motion

---

[6]  *Id.*

[7]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[8]  *Id.*

[9]  *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252 (alterations in original)).

[10]  *Liberty Lobby*, 477 U.S. at 252 *(*quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)) (alteration and emphasis in original).

in the light most favorable to the nonmoving party."[11]  The evidentiary record at trial will typically never surpass what was compiled during discovery.

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[12]  For example, while "at the motion-to-dismiss stage of proceedings a district court is obligated to accept the allegations in a plaintiff's complaint as true, it does not accept mere allegations as true at the summary judgment stage."[13]  The moving party must identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[14]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[15]

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (1) citations to particular parts of materials in the record that go beyond mere allegations; (2) a showing that the materials cited do not establish the absence or presence of a genuine dispute; or (3)

---

[11]   *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[12]   *Celotex*, 477 U.S. at 323.
[13]   *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 330 (3d Cir. 2016).
[14]   *Id.* (internal quotations omitted).
[15]   *Id.*

a display that an adverse party cannot produce admissible evidence to support the fact.[16]

Summary judgment is effectively "put up or shut up time" for the nonmoving party.[17]  When the movant properly supports his motion, the nonmoving party must show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[18]  The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[19]  Instead, it must "identify those facts of record which would contradict the facts identified by the movant.'"[20]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the Court may "consider the fact undisputed for purposes of the motion."[21]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[22]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether

---

[16]   Fed. R. Civ. P. 56(c)(1).
[17]   *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).
[18]   *Liberty Lobby*, 477 U.S. at 250.
[19]   *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[20]   *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[21]   Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613–14 (3d Cir. 2018).
[22]   Fed. R. Civ. P. 56(c)(3).

there is a genuine issue for trial."[23]  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[24]

### B.    Facts

With that standard outlining the Court's framework for review, I now turn to the facts in this case.

Universal Pressure Pumping, Inc. ("Universal") employed Willie Coleman to provide services at Chief's fracking pad in Wyalusing, Pennsylvania.[25]  There, Coleman helped "rig-up" and "rig-down" natural gas wells.[26]  Chief had tasked Universal with setting up a functioning gas well at that location.[27]

On March 19, 2019, Coleman was working a night shift at Chief's fracking pad.[28]  As Coleman and a co-worker began moving a pipe, Coleman's foot fell into a hole or depression.[29]  This caused Coleman to trip, rolling his right ankle and severely fracturing his left ankle.[30]  Then litigation ensued.

### C.    Analysis

Chief asserts immunity under p§ 302(a) of the Pennsylvania Workers' Compensation Act ("PWCA").[31]  Section 302(a) provides that "[a]ny contractor or

---

[23]  *Liberty Lobby*, 477 U.S. at 249.
[24]  *Id*. at 249–50 (internal citations omitted).
[25]  Doc. 1 at ¶ 8.
[26]  *Id.* at ¶ 9.
[27]  *Id.* at ¶ 10.
[28]  *Id.* at ¶¶ 14–15.
[29]  *Id.* at ¶ 16.
[30]  *Id.* at ¶¶ 16–17.
[31]  77 P.S. § 461.

his insurer who shall become liable hereunder for such compensation may recover the amount thereof paid and any necessary expenses from the subcontractor primarily liable therefor."[32]   Section 302(a) defines a "contractor" as one "who contracts with another (1) to have work performed consisting of (i) the removal, excavation or drilling of soil, rock or minerals, or . . . (2) to have work performed of a kind which is a regular or recurrent part of [its] business, occupation, profession or trade."  Such a contractor is a statutory employer immune from tort claims under PCWA § 303.[33]

Here, Chief has adduced its Pressure Pumping Agreement with Universal.[34] In it, Universal agrees to perform "Pressure Pumping Services (fracturing)" at Chief's well sites in "Northeast Pennsylvania."[35]  This process involves pumping fluids down a well to extract natural gas in shale rock.[36]  Because Chief had Universal "perform work involving the 'removal, excavation or drilling of ...

---

[32]   *Id.*
[33]   77 P.S. § 481.
[34]   Doc. 18-1.
[35]   *Id.* at 1.
[36]   *See Fiorentino v. Cabot Oil & Gas Corp.*, 750 F. Supp. 2d 506, 510 n.1 (M.D. Pa. 2010) ("Hydrofracturing is a process in which pressurized fluids are used to dislodge and release natural gas from deep underground formations."); *see also Snyder Bros., Inc. v. Pennsylvania Pub. Util. Comm'n*, 198 A.3d 1056, 1057–58 (Pa. 2018), *order amended on reconsideration*, 203 A.3d 964 (Pa. 2019) ("[V]ertical wells . . . utilize the hydraulic fracturing process, colloquially referred to as 'fracking,' to extract natural gas through a vertical well bore from the underlying geologic formation known as the Marcellus Shale.").

minerals' (natural gas), the facts of this case implicate the specialized definition found in Section 302(a)."[37]

The Colemans and Western fail to adduce evidence that Chief did not have Universal perform work involving the removal, excavation, or drilling of natural gas. And in the absence of evidence to the contrary, there is no genuine factual dispute that Chief contracted with Universal "to have work performed consisting of . . . the removal, excavation or drilling of soil, rock or minerals."[38]  Accordingly, Chief is a contractor and statutory employer immune from tort claims under PCWA §§ 302(a) and 303.

Chief has also adduced the affidavit of Bryce Yeager, its Drilling and Completion Manager.[39]  Yeager avers that  "Chief's larger North American oil and gas drilling, exploration and development operations" include "the extraction of oil and natural gas through the use of hydraulic fracturing or 'fracking' of the Marcellus shale formation located in Pennsylvania."[40]  Yeager further avers that "Chief operates seventy (70) well sites in Pennsylvania where its contractors perform fracturing services."[41]  And Universal performed fracturing services at thirty-eight of these seventy well sites.[42]  This demonstrates that Chief contracted with Universal

---

[37] *Doman v. Atlas Am., Inc.*, 2016 PA Super 233 (affirming summary judgment in favor of defendant, which "is entitled to tort immunity").
[38] 77 P.S. § 461.
[39] Doc. 22-1 at 2–6.
[40] *Id.* at 2–3.
[41] *Id.* at 3.
[42] *Id.* at 4.

"to have work performed of a kind which is a regular or recurrent part of [its] business."[43]

Again, the Colemans and Western fail to adduce evidence that such work was not a regular or recurrent part of Chief's business.  And in the absence of evidence to the contrary, there is no genuine factual dispute that Chief contracted with Universal "to have work performed of a kind which is a regular or recurrent part of [its] business."[44]   So Chief is immune from tort claims under this alternative definition of "contractor" as well.  Chief's motion for summary judgment is granted as to Counts One and Two of the Colemans' complaint.

As Coleman's tort claims against Chief fail, so does Chambers-Coleman's loss-of-consortium claim.[45]  Thus, Chief's motion for summary judgment is granted as to Count Three of the Colemans' complaint as well.

## III.   CONCLUSION

For the foregoing reasons, Chief's motion for summary judgment is granted. An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[43]  77 P.S. § 461.

[44]  *Id.*

[45]  *See Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 553 (Pa. Super. Ct. 1985) ("We follow the majority view that an action for loss of consortium is derivative of the injured spouse's claim. Pennsylvania courts have long held that an action for loss of consortium is derivative.").