## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

WILLIE COLEMAN et al.,

                     Plaintiffs,

       v.

CHIEF OIL & GAS, LLC, et al.,

                 Defendants.

CIVIL ACTION NO. 4:21-CV-00090

(MEHALCHICK, J.)

### MEMORANDUM

Plaintiffs Willie Coleman ("Coleman") and Tracy-Chambers Coleman (collectively, "Plaintiffs") initiated this action on January 15, 2021, by filing a complaint alleging claims for premise liability, negligence, and loss of consortium against Defendants Chief Oil & Gas, LLC, ("Chief") and Western Oilfields Supply Company ("Western"). (Doc. 1). Presently before the Court is a motion for summary judgment filed by Western and a motion for leave to file an amended response to Western's motion for summary judgment. (Doc. 92; Doc. 98). For the following reasons, the motion for summary judgment will be **DENIED** and the motion for leave to file an amended response will be **DENIED as MOOT**. (Doc. 92; Doc. 98).

### I.    BACKGROUND

The following factual summary is taken from Western's Statement of Facts, Plaintiffs' answers thereto, and the parties' accompanying exhibits. (Doc. 94; Doc. 95). Western is a company focused on water handling solutions and "is involved with pipes, tanks, pumps, water, and liquid handling solutions."[1] (Doc. 94, ¶ 25; Doc. 94-6, at 4). Western had installed

---

[1] Coleman denies this statement as it is stated, however, fails to introduce evidence to contradict it. (Doc. 95, at 3).

a pump and piping for freshwater tanks at a fracking site known as the "Kinglsey Pad."[2] (Doc. 94, ¶ 27; Doc. 94-6, at 5, 14). Coleman, who was employed by a company called Universal Pressure Pumping, Inc. as an equipment operator and CDL driver, was tasked with setting up a functioning gas well at the Kinglsey Pad. (Doc. 94, ¶¶ 2, 9, 12; Doc. 94-5, at 6-7; Doc. 95, at 2-3). Around midnight on March 19, 2019, as Coleman and a co-worker were carrying an iron pipe over "a containment or thick padding covering the well," his foot fell into a hole or depression.[3] (Doc. 94, ¶¶ 2, 15; Doc. 94-1; Doc. 95, at 2). As a result, Coleman suffered an injury to his ankle. (Doc. 94, ¶¶ 2, 3; Doc. 94-1).

Seeking damages, Plaintiffs brought this suit on January 15, 2021. (Doc. 1). Plaintiffs alleged the following Counts: Count One: Premise Liability, Mr. Coleman v. Defendants (Doc. 1, ¶¶ 30-38); Count Two: Negligence, Mr. Coleman v. Defendants (Doc. 1, ¶¶ 39-45); Count Three: Loss of Consortium Tracey Chambers-Coleman v. Defendants (Doc. 1, ¶¶ 46-48). On May 24, 2021, Chief filed a motion to dismiss. (Doc. 14). The Court converted the motion to a motion for summary judgment. (Doc. 14; Doc. 21). On March 17, 2022, the Court found in favor of Chief on the merits and terminated Chief from this action. (Doc. 26).

On May 12, 2022, Plaintiffs filed a nearly identical amended complaint, the only modification being the addition of Evergreen Oilfield Solutions ("Evergreen") as a Defendant. (Doc. 36). Plaintiffs alleged that Evergreen also contributed to the contamination at Chief's gas pad. (Doc. 36, ¶ 13). As no additional claims were pursued against Chief and

---

[2] Coleman denies this statement, arguing that is was made with "no first hand knowledge or personal knowledge of the worksite." (Doc. 95, at 3-4).

[3] Coleman testified that "he stepped back onto the rubber mat when he lost his footing with his left ankle and he fell" into a hole that "was under the containment." (Doc. 94, ¶¶ 17, 20; Doc. 94-5, at 11).

none of the previously dismissed claims against Chief were modified, in accordance with the Court's previous Memorandum and Order, Chief remains terminated from this action. (Doc. 36; Doc. 49; Doc. 50). On June 17, 2022, Western filed an answer to Plaintiffs' amended complaint. (Doc. 39). On July 20, 2022, Evergreen filed a motion to dismiss, which was granted on December 6, 2022. (Doc. 43; Doc. 50). Accordingly, Evergreen was terminated from this action. (Doc. 50). Western is thus the only Defendant that remains in this case.

On April 9, 2024, Western filed the instant motion for summary judgment, a brief in support, and a statement of facts. (Doc. 92; Doc. 93; Doc. 94). On April 26, 2024, Coleman filed a response to Western's statement of facts and brief in opposition, incorrectly filed in one document docketed as a brief in opposition. (Doc. 95). On June 19, 2024, Coleman filed a motion for leave to file an amended response to Western's motion for summary judgment.[4] (Doc. 98). On September 19, 2024, the Court held oral argument on the outstanding motions. Accordingly, the motions are ripe for discussion.

---

[4] On June 19, 2024, Coleman filed a motion for leave to file an amended response to Western's motion for summary judgment. (Doc. 98, at 2). On June 25, 2024, Western filed a brief opposing Coleman's motion. (Doc. 99). Coleman filed a brief in support of his motion for leave to file an amended response on June 25, 2024, and an affidavit. (Doc. 100; Doc. 101). Coleman then filed two identical sur reply briefs on June 28, 2024. (Doc. 102; Doc. 103).

Coleman's motion for leave to file an amended response is premised on the introduction of an expert report that was not produced until after Western filed the instant motion for summary judgment. (Doc. 100, at 5; Doc. 101, at 2). The report is not untimely, as Western filed its motion for summary judgment prematurely before discovery deadlines had passed. Coleman takes issue with Western's premature filing in his papers. The parties discussed Coleman's motion and the introduction of the expert report at oral argument. At that time, Western informed the Court that it has no objection to proceeding with the motion "on the merits" and that it does not object to the introduction of the expert report. The Court then received the report and argument continued, with consideration of the report. Accordingly, the Court has received the expert report and will consider it in the disposition of Western's motion for summary judgment. Having resolved the issues contained in Coleman's motion for leave to file an amended response, the Court will **DENY** Coleman's motion as **MOOT**. (Doc. 98).

II.    **STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment.").

## III.   DISCUSSION

The parties dispute whether Western can be held liable for negligence for Coleman's injuries. (Doc. 93, at 5). Western argues that it cannot be held liable because the record reflects it was not involved in the installation of the containment and has no control over the area in which Coleman suffered his injury. (Doc. 93, at 5). Plaintiffs assert that summary judgment should be denied because Western's motion is premature, as discovery is still on going and

they have been unable to depose key witnesses from the dismissed Defendants, Evergreen and

Chief. (Doc. 95, at 6). Further, Plaintiffs argue that evidence Western relies on, the testimony

of Western's corporate designee, Timothy Bastian ("Bastian"), "lack[s] credibility," thus

creating questions of material fact as to whether Western caused the condition that injured

Coleman. (Doc. 95, at 7).

The remaining claim in this case is a premise liability claim sounding in negligence.

To establish a negligence claim, a plaintiff must demonstrate "(1) a duty or obligation

recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and

the resulting injury; and (4) actual damages." *Estate of Swift by Swift v. Northeastern Hosp.*, 690

A.2d 719, 722 (Pa. Super. 1997); *see also Garcia v. United States*, No. 3:17-CV-01910, 2022 WL

19569519, at *4 (M.D. Pa. Dec. 14, 2022), *report and recommendation adopted*, No.

3:17CV1910, 2023 WL 8281686 (M.D. Pa. Nov. 30, 2023). Whether a duty exists is a

question of law to be determined by the trial court. *Walters v. UPMC Presbyterian Shadyside*,

144 A.3d 104, 113 (Pa. Super. 2016).

> As to the scope of the duty owed, Pennsylvania has adopted Section 343 of the
> Restatement of Torts (Second). Thus, [a] possessor of land is subject to liability
> for physical harm caused to his invitees by a condition on the land if, but only
> if, he (a) knows or by the exercise of reasonable care would discover the
> condition, and should realize that it involves an unreasonable risk of harm to
> such invitees, and (b) should expect that they will not discover or realize the
> danger, or will fail to protect themselves against it, and (c) fails to exercise
> reasonable care to protect them against the danger.
>
> *Pusateri v. Wal-Mart Stores E., L.P.*, 646 F. Supp. 3d 650, 653 (W.D. Pa. 2022);
> *see also* Restatement (Second) of Torts § 343.

"For a danger to be 'known,' it must 'not only be known to exist, but . . . also be recognized

that it is dangerous and the probability and gravity of the threatened harm must be

appreciated." *Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 85 (Pa. Super. 2015).

The record contains a question of material fact as to whether Western had the requisite control over the containment and/or the area in which Plaintiff was injured. There is evidence in the record that calls into question whether Western had control over the area. For instance, the record contains an affidavit from Chief's Drilling and Completion Manager, Bryce Yeager ("Yeager"), which provides:

> The Co-Defendant, Western Oilfield Supply Co. d/b/a Rain for Rent("Co-Defendant"), did not supply or install the containment. Co-Defendant only provided water transfer equipment, which was located near the frac tanks on the far left side of the well pad. None of Co-Defendant's equipment was located in the well head area where Plaintiff Willie Coleman sustained injury on March 19, 2019.
>
> (Doc. 93-11, ¶ 13).

Yeager's affidavit also provides that previously terminated Defendant Evergreen had control over the area and was "responsible for installing the containment on the well pad at issue." (Doc. 93-11, ¶ 12). This affidavit is consistent with Chief's response to interrogatories. (Doc. 94-8).

Meanwhile, the record also contains an expert report dated June 5, 2024 ("Report") that was drafted by Edward R. Ziegler ("Ziegler"). Ziegler works in petroleum and safety consulting. (Doc. 98, at 94). According to Coleman, in the report Ziegler "utilized his roughly fifty-nine years of relevant experience to discuss at length the failures of Western Oilfield in their management of the worksite where Plaintiff, Willie Coleman, was injured." (Doc. 98, at 3). The expert report does provide that, in Ziegler's professional opinion, "Western Oilfields failed to provide a safe workplace and failed to follow safety regulations and industry standards and practice and similar issues and failures set forth in this Report." (Doc. 98, at 92). The report also declares: "the failures of Western Oilfields were causes of this incident." (Doc. 98, at 92). At oral argument, the parties disputed the application of the Report to the

facts at bar. Counsel for Western argued that the "general gist" of the Report is that Ziegler created a duty where none exists. (Doc. 111, at 11). Western's counsel asserted that the Report "reaches at straws" to provide Western acted below the standard of care without addressing the facts of the case in the report. (Doc. 111, at 12). Further, Western asserts that the Report "totally dismisses" the fact that Western was never in the area at the time of the incident. (Doc. 111, at 11). However, to this point, the Court notes that the record does not clarify whether Western was in the area at the time of the incident. In response to Western's arguments, Coleman's counsel responded that "Mr. Ziegler says that the evidence to date shows that there were numerous invoices that were generated by Western Oilfields based on the work that it had performed on the containment and on the pad before this incident happened." (Doc. 111, at 12-13). It is Coleman's position that Western's longstanding work at the Kingsley Pad "tends to show that [Western] had significant responsibility on the containment in the pad." (Doc. 111, at 13).

Aside from this affidavit and the expert report, the record contains conflicting testimony from the parties regarding the level of control Western exercised over the containment. First, the record contains testimony from Western's corporate designee Bastian. (Doc. 94, ¶ 23; Doc. 94-6). Bastian is Western's Senior Director of Risk Management. (Doc. 94, ¶ 24; Doc. 94-6, at 4). Bastian testified that the work Western completed at the fracking site was "located outside of the containment area as the pump was combustible and, therefore, would not be set up near a wellhead." (Doc. 94, ¶ 28; Doc. 94-6, at 5-6, 12, 22-23, 34). Further, that Western's work at the site did not involve installing the pipes into the ground because the site was temporary and Western wanted to avoid undue impact on the environment. (Doc. 94, ¶ 29; Doc. 94-6, at 23). Coleman takes issue with Bastian's testimony, asserting it is self-serving and that Bastian has no firsthand knowledge of the incident and has he never visited

the worksite. (Doc. 95, at 3). Bastian's own testimony supports these concerns. (Doc. 95, at 19-20, 29).

The record also contains record testimony from David Hallisey ("Hallisey"), who was the lead member of the onsite crew for Western. (Doc. 94-7, at 9). Hallisey testified that Western did not have anything to do with the containment and that Western employees "weren't allowed to go into that section where they were fracking," and where the incident occurred. (Doc. 94-7, at 5). Again, Coleman argues that this testimony is self-serving and not credible. (Doc. 95, at 4; Doc. 111, at 13).

In support of his position, that Western did exercise control over the containment, Coleman submits his own deposition. (Doc. 94-5). Therein, Coleman states his belief that Western was responsible for erecting and maintaining the containment. Coleman also testifies, however, that he did not see the containment being set up or any Western employees at the site at the time of the incident. (Doc. 94-5, at 32; Doc. 95, at 16). Western thus asserts that Coleman's testimony is "self-serving and not competent," because "the rubbing matting and containment had already been set up by the time [Coleman] arrived" at the fracking site. (Doc. 93, at 7).

The self-serving evidence submitted by the parties is insufficient to show that there are no questions of material fact related to Coleman's negligence claim. *See Gonzalez v. Sec'y of the Dep't of Homeland Sec.,* 678 F.3d 254, 263 (3d Cir.2012) ("[a]s a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'"); *see also Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir.1984) ("Self-serving statements by a plaintiff's corporate officers are not, alone, substantial enough evidence of antitrust injury for a plaintiff to survive a motion for summary judgment."). A reasonable juror could find either Coleman or Western's testimony credible.

*See Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542 (E.D. Pa. 2012) (denying summary judgment where a reasonable juror could find arguably self-serving evidence credible despite other introduce introduced). Thus, setting aside the testimony introduced by the parties, the Court is left with an affidavit from former Defendant Chief providing Western had no control over the dangerous condition and an expert report suggesting the opposite. As the Court is not in a position to weigh evidence at this juncture, it would be improper to grant Western's motion for summary judgment at this juncture. Whether Western exercised control over the pertinent area is still very much in dispute. This is especially true given the fact that this motion for summary judgment was prematurely filed, before Coleman was able to finish deposing Evergreen and Chief. (Doc. 95 at 9). Accordingly, Western's motion for summary judgment must be **DENIED**.[5] (Doc. 92).

IV.   <u>CONCLUSION</u>

Based on the foregoing, Western's motion for summary judgment is **DENIED.** (Doc. 92). Coleman's motion for leave to file an amended response to Western's motion for summary judgment is **DENIED** as **MOOT**. (Doc. 98).

An appropriate Order follows.

**Dated: January 21, 2025**                    **BY THE COURT:**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**

---

[5] The Court again here acknowledges that this motion was filed before the discovery deadlines had passed and therefore it may have affected the parties' ability to complete meaningful discovery. That considered, the Court is willing to revisit the discovery deadlines previously set in this case to ensure a just resolution to this action.